## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | Case Number: 3:23-CR-00418-E |
| | § | |
| MARCO ANGELE HENDRICKSON, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Marco Angele Hendrickson's Motion for Judgment of Acquittal, or in the Alternative, for a New Trial (Motion)—which seeks acquittal from the jury's August 7, 2024 guilty verdict on a charge of unlawful possession of a firearm by a convicted felon due to a lack of legally sufficient evidence. (ECF No. 145 at 2-6). Alternatively, Hendrickson seeks new trial on the bases that (i) the Court erred in failing to submit a jury instruction on justification and self-defense and (ii) the Court erred in denying Hendrickson's *ex parte* motion for authorization of funds to retain expert witnesses. (ECF No. 145 at 6-8). For the reasons enumerated hereunder, the Court DENIES Hendrickson's Motion.

### I.    BACKGROUND

Hendrickson was charged by indictment on October 17, 2023, with possession of a firearm by a convicted felon. (ECF No. 4). Hendrickson pleaded not guilty. (ECF No. 16). The Court conducted a three-day jury trial in August 2024. *Inter alia*, the government presented evidence that on June 17, 2023, Hendrickson carried a firearm and became engaged in a shootout with an unidentified assailant near a Jack in the Box and Food Mart located off of Park Lane—including video evidence of (i) the shooting and (ii) Hendrickson dropping the firearm into a trashcan near

the Food Mart. The Government presented testimony from several law enforcement officers that investigated the scene after the shooting—including recovery of the firearm. The jury found Hendrickson guilty of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 992(g)(1) and 924(a)(8). (ECF No. 136).

On August 22, 2024, Hendrickson filed his Motion. (ECF No. 145). The Government has responded. (ECF No. 146). Hendrickson filed no reply. Having been fully briefed, Hendrickson's Motion is ripe for determination.

## II.   LEGAL STANDARDS

### A.  Legal Sufficiency

After a jury verdict, "[a] defendant may move for a judgment of acquittal." Fed. R. Crim. P. 29(c). "A motion for judgment of acquittal challenges the sufficiency of the evidence to convict." *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005) (quoting *United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998)). This court "owe[s] great deference" to the jury's verdict. *United States v. Gray*, 96 F.3d 769, 772 (5th Cir. 1996). In deciding the sufficiency of the evidence, the relevant question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The Fifth Circuit has explained:

> **This court must assume that the evidence offered by the prosecution is true**, *Rojas Alvarez*, 451 F.3d at 326, **and weigh the evidence "in a light most deferential to the verdict rendered by the jury."** *Lucio*, 428 F.3d at 522. To uphold the conviction, "the evidence need not exclude every hypothesis of innocence." *United States v. Diaz-Carreon*, 915 F.2d 951, 953–54 (5th Cir. 1990). "[I]f the fact finder was presented with sufficient evidence to support the verdict reached, that verdict must be upheld." *Lucio*, 428 F.3d at 522. **"A jury is free to choose among reasonable constructions of the evidence."** *Diaz-Carreon*, 915 F.2d at 954 (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (en banc)). **This court does not determine "whether the jury correctly determined guilt or innocence" but only "whether the jury made a rational decision."** *Rojas*

*Alvarez*, 451 F.3d at 326 (quoting *United States v. Lopez–Urbina*, 434 F.3d 750, 757 (5th Cir. 2005)).

*United States v. Lopez-Monzon*, 850 F.3d 202, 206 (5th Cir. 2017) (emphasis added in bold). "[A]ny conflict in the evidence must be resolved in favor of the jury's verdict." *United States v. Lundy*, 676 F.3d 444, 448 (5th Cir. 2012) (citing *United States v. Duncan*, 919 F.2d 981, 990 (5th Cir. 1990)); *see United States v. Bates*, 850 F.3d 807, 810 (5th Cir. 2017) (discussing the same).

### B. Motion for New Trial

Federal Rule of Criminal Procedure 33 permits the district court to grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33; *United States v. Mahmood*, 820 F.3d 177, 190 (5th Cir. 2016). The "interest of justice," moreover, may be determined by the "trial judge's evaluation of witnesses and weighing of the evidence." *United States v. Wall*, 389 F.3d 457, 465–66. (5th Cir. 2004). Although the Court has broad discretion in ruling on a Rule 33 motion, it may not grant a new trial unless "the evidence preponderates heavily against the verdict such that it would be a miscarriage of justice to let the verdict stand." *United States v. Fuchs*, 467 F.3d 889, 910 (5th Cir. 2006). These motions are "disfavored and must be reviewed with great caution." *United States v. Eghobor*, 812 F.3d 352, 363 (5th Cir. 2015).

### III.   ANALYSIS

### A. Whether the Evidence Before the Jury was Legally Sufficient to Find Hendrickson Guilty

Hendrickson asserts the government failed to prove beyond a reasonable doubt that (i) the firearm was properly identified as a firearm under the Gun Control Act; (ii) the firearm recovered was not properly linked to Hendrickson's possession; and (iii) the firearm alleged in the indictment did not travel in interstate or foreign commerce. (ECF No. 145 at 2-6). The Court addresses each of these arguments, separately.

      i.      *Evidence that the Firearm was Properly Identified as a Firearm under the Gun Control Act*

In this issue, Hendrickson asserts both that the government failed to present sufficient evidence that the weapon Hendrickson allegedly possessed was a "firearm" and that the Court failed to instruct the jury as to the definition of a firearm as defined by the Gun Control Act of 1968. (ECF No. 145 at 5-6).

First, the Court's charge to the jury contains the following regarding the term "firearm:"

> The term "firearm" means any weapon that will or is designed to or may readily be converted to expel a projectile by the action of an explosive. The term "firearm" also includes the frame or receiver of any such weapon, or any firearm muffler or firearm silencer, or destructive device.

(ECF No. 135 at 22). This definition for a firearm is virtually identical to the Gun Control Act's definition of a "firearm." 18 U.S.C.A. § 921(a)(3). ("The term 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device."). Hendrickson offers no other argument or law to suggest the Court's instruction was erroneous. To the extent Hendrickson has sought acquittal based on the charge to the jury based on an improper jury instruction on the definition of a "firearm," the Court DENIES the Motion.

As to the evidence of the recovered firearm being a "firearm" as defined, the government presented evidence from several law enforcement officers' on the discovery and seizure of the firearm that Hendrickson was alleged to have possessed—confirming that the firearm was a "firearm." Officers Daryna Maksymchuk and Sisto Rodriguez testified that they discovered and obtained the firearm. Officer Maksymchuk testified (i) that the store clerks at the Food Mart warned her that a firearm was present in a nearby trashcan and (ii) that she found the firearm from the trashcan. The government introduced a screen shot from Officer Maksymchuk's body camera,

which depicted the same—a firearm. Officer Rodriguez testified that he recovered the firearm from the trashcan. The government presented the recovered firearm as Exhibit 36 through Officer Rodriguez's testimony. The government further presented evidence from Crime Scene Investigator Medina, who identified the firearm as a Taurus. ATF Special Agent Matthew Gilbert referred to the Exhibit 36 as a "firearm" and testified that it was a "firearm." Firearm Toolmark Examiner Amanda Gibson also testified Exhibit 36 was a "firearm"—explaining how a firearm functions. The record contains no evidence that controverts or rebuts the evidence that the recovered firearm was a "firearm" as defined in the Gun Control Act and charge to the jury. *See* 18 U.S.C.A. § 921(a)(3); (ECF No. 135 at 22).

Weighing the evidence in the light most deferential to the jury's verdict, the Court determines that the jury made a rational decision in finding that the firearm (Exhibit 36) was properly identified as a firearm under the Gun Control Act. The record contains legally sufficient evidence that the firearm was properly identified as a "firearm" under the Gun Control Act. Thus, the Court DENIES Hendrickson's motion for acquittal as to this basis.

ii.     *Evidence that the Firearm Recovered was Linked to Hendrickson's Possession*

Hendrickson asserts the government failed to present sufficient evidence that the firearm recovered (Exhibit 36) was the same firearm Hendrickson allegedly possessed. Specifically, Hendrickson challenges that (i) there was a lack of fingerprints on the firearm and (ii) one of the government's witnesses labelled the Taurus as a "22 Caliber Taurus 63C Pistol," when the recovered firearm was a 9-millimeter Taurus.

As to the identification of Hendrickson as possessing a firearm, the government presented video evidence that depicted the following in chronological order:[1]

---

[1] In the Court's record, Exhibits 1 to 3 constitute Food Mart video evidence and Exhibits 46 to 52 constitute Jack in the Box video evidence.

1. A woman (i) emerges from an alleyway between the Food Mart and the Jack in the Box; (ii) crosses the street; and (iii) sits on a concrete barrier on the sidewalk;

2. Hendrickson approaches the woman by himself, walking slowly;

3. Hendrickson stops on the sidewalk across the street from the Food Mart—several yards away from the woman;

4. Within a minute thereafter, an unidentified individual emerges from the same alleyway as the woman;

5. The unidentified individual approaches Hendrickson;

6. Hendrickson touches something around his waistband;

7. The unidentified individual shoots Hendrickson, striking him;

8. Hendrickson drops to the ground and shoots at the unidentified individual—with a muzzle flashing;

9. The unidentified individual runs away;

10. Hendrickson stands up and walks across Park lane, through a parking lot toward the Food Mart;

11. Hendrickson throws a firearm in the trashcan at the Food Mart and sits by the front door of the Food Mart.

The government presented evidence that Hendrickson wore a glove when he possessed the firearm during the shooting incident. The government presented evidence that Dallas Fire Rescue arrived on scene and transported Hendrickson to the hospital. Through testimony, Officer Aaron Coleman identified Hendrickson at the hospital by a tear drop tattoo on Hendrickson's face. Austin Labudda—Hendrickson's probation officer—testified Hendrickson is a convicted felon and identified Hendrickson in Officer Coleman's body camera footage from the hospital. Furthermore, Forensic Fingerprint Examiner Jennifer McCampbell testified that Hendrickson's fingerprints match those involved in a prior conviction in the Northern District of Oklahoma.

As to the lack of fingerprints on the firearm, McCampbell testified that (i) it was much less likely to obtain a fingerprint off of a firearm if an individual wears gloves and (ii) it is less likely

to have fingerprints on a firearm's grip due to the texture of the grip—even without a glove. Investigator Medina testified as to the same. The government presented evidence that the barrier effect that a glove provides prevents the texture of a fingerprint from transferring onto other surfaces.

As to the labelling of the firearm, the government presented evidence that Investigator Medina took photos as a part of her report. Investigator Medina explained on cross examination that the photos depict the recovered firearm as a 9-millimeter caliber. Investigator Medina testified she inadvertently wrote .22 caliber when referring to the firearm in some portions of her report—instead of 9-millimeter caliber—because .22 caliber shell casings were recovered from the scene of the shooting. Investigator Medina testified that other parts of her report correctly showed the firearm as a 9-millimeter caliber firearm.

As discussed above, a jury is free to choose among reasonable constructions of the evidence. *Lopez-Monzon*, 850 F.3d at 206 (internal quotation omitted). Weighing the evidence in the light most deferential to the jury's verdict, the Court determines that jury made a rational decision in finding that the recovered firearm was linked to Hendrickson's possession. The record contains legally sufficient evidence that Hendrickson possessed the recovered firearm. Thus, the Court DENIES Hendrickson's motion for acquittal as to this basis.

iii.     *Evidence that the Firearm Travelled in Interstate or Foreign Commerce*

Hendrickson asserts legally sufficient evidence did not exist to establish that the firearm (Exhibit 36) travelled through interstate or foreign commerce. (ECF No. 145 at 4-5). Special Agent Gilbert testified on his familiarity with Taurus firearms—including that Taurus firearms are only manufactured in Brazil, Florida, and Georgia. Special Agent Gilbert testified the firearm was imprinted with "made in Brazil" and "Bainbridge, GA," and these imprints remained visible on

the recovered firearm—presented to the jury. It is undisputed that Hendrickson's possession of the firearm occurred in Dallas, Texas.

On cross examination, Special Agent Gilbert admitted that he did not call Taurus to confirm whether the serial number on the firearm was genuine. Special Agent Gilbert testified with his familiarity with 3D printed guns and that the firearm was not a 3D printed gun. Toolmark Examiner Gibson also confirmed the firearm was a standard Taurus. Toolmark Examiner Gibson also testified as to her familiarity with 3D printed guns—further confirming that the firearm was not a 3D printed gun. The government presented evidence that the recovered firearm was not 3D printed because, *inter alia*, it lacked the linings or striations that result from 3D printing.

"'The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence.'" *United States v. Anderson*, 174 F.3d 515, 522 (5th Cir. 1999) (quoting *United States v. Burton*, 126 F.3d 666, 669-70 (5th Cir. 1997)). Although the jury heard some evidence of the hypothesis that the firearm could have been a 3D printed gun, the unrebutted evidence showed the firearm was not 3D printed. Weighing the evidence in the light most deferential to the jury's verdict, the Court determines that jury made a rational decision in finding that the recovered firearm travelled in interstate or foreign commerce. The record contains legally sufficient evidence that the firearm travelled in interstate or foreign commerce. Thus, the Court DENIES Hendrickson's motion for acquittal as to this basis.

### B.  Whether Hendrickson is Entitled to a New Trial

Rule 33 divides motions for a new trial into two categories: (i) motions based on newly discovered evidence and (ii) motions based on "other grounds." Fed. R. Crim. P. 33; *Wall*, 389 F.3d at 466. Hendrickson presents no "newly discovered evidence;" instead, Hendrickson bases

his request for new trial because (i) the Court did not include a jury instruction on justification and (ii) the Court denied pretrial, *ex parte* motion(s) for authorization of funds under the Criminal Justice Act to retain expert witnesses. (ECF No. 145 at 6-8). The Court addresses hereunder each of the "other grounds" bases he asserts in support of his motion for new trial. *See* Fed. R. Crim. P. 33.

    *i.*     *Jury Instructions on Justification and Self-Defense*

"A criminal defendant is entitled to an instruction on a defense only if he presents sufficient evidence 'for a reasonable jury to find in his favor.'" *United States v. Penn*, 969 F.3d 450, 455 (5th Cir. 2020) (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)). The defendant must produce evidence to sustain a finding on each element of the defense "before it may be presented to the jury." *United States v. Posada-Rios*, 158 F.3d 832, 873 (5th Cir. 1998). As to the justification defense on a felon-in-possession charge, the Fifth Circuit has explained:

> To establish that defense, a defendant must show that **(1)** he was under an imminent threat of death or serious injury; **(2)** he did not "recklessly or negligently" place himself in a situation where he would be forced to possess a firearm; **(3)** he had no "reasonable, legal alternative" to possessing the firearm; and **(4)** "a direct causal relationship" could be anticipated between possession of the firearm and abatement of the threat. *Id.* (quoting *United States v. Gant*, 691 F.2d 1159, 1162–63 (5th Cir. 1982)). The defendant must also prove a **fifth** element: that he possessed the firearm only during the time of danger. *See Gant*, 691 F.2d at 1163 n.9.

*Penn*, 969 F.3d at 455 (emphasis added in bold); *see also* Pattern Crim. Jury Instr. 5th Cir. 1.38 (2019). The Fifth Circuit further explained:

> **A defendant must act promptly to rid himself of the firearm once the circumstances giving rise to the justification subside. [. . .] A defendant can't assert a justification defense if he "fails to take advantage of that chance [(to rid himself of the firearm)]."** *Id.*; *see also Paolello*, 951 F.2d at 542 (explaining that if the defendant ran from the police, then he "had an opportunity to dispose of the gun . . . earlier than he did"); *United States v. Hammons*, 566 F.2d 1301, 1302–04 (5th Cir.) (holding that a defendant who retained possession of a gun for only ten minutes couldn't raise a justification defense because he made no attempt to get

rid of the gun until police arrived and "tried to conceal the [gun] from the officers"), *vacated on other grounds*, 439 U.S. 810, 99 S.Ct. 68, 58 L.Ed.2d 102 (1978).

*Penn*, 969 F.3d at 456 (emphasis added in bold). As to the self-defense—defense of third person instruction, the Fifth Circuit Pattern Jury Instructions for Criminal Cases provide:

> The defendant has offered evidence that he [ ] acted in self-defense [defense of another]. The use of force is justified when a person reasonably believes that force is necessary for the defense of oneself or another against the immediate use of unlawful force. However, a person must use no more force than appears reasonably necessary under the circumstances.
>
> [Force likely to cause death or great bodily injury is justified in self-defense [defense of another] only if a person reasonably believes such force is necessary to prevent death or great bodily harm.]
>
> The government must prove beyond a reasonable doubt that the defendant did not act in [reasonable] self-defense [defense of another].

Pattern Crim. Jury Instr. 5th Cir. 1.39 (2019). The Fifth Circuit has explained:

> Self-defense is an affirmative defense on which the defendant bears the initial burden of production. *United States v. Alvarez,* 755 F.2d 830, 842 n. 12 (11th Cir.), *cert. denied,* 474 U.S. 905, 106 S.Ct. 274, 88 L.Ed.2d 235 (1985), *and cert. denied,* 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 380 (1987). **If and only if the defendant has met his burden of production, the Government bears the burden of persuasion and must negate self-defense beyond a reasonable doubt.** *Id.*

*United States v. Branch*, 91 F.3d 699, 714 n.1 (5th Cir. 1996) (emphasis added in bold). "[I]t is not enough that an item of evidence viewed alone and unweighed against all the evidence supports an inference that a defendant acted in self defense." *Branch*, 91 F.3d at 713 (internal citation omitted). "It is a necessary precondition to the claim of self-defense that the defendants be free from fault in prompting the [. . .] use of force." *Branch*, 91 F.3d at 717 (citing *Wallace v. United States,* 162 U.S. 466, 472 (1896)).[2] Prior to trial, Hendrickson filed his proposed jury instructions, which

---

[2] In *Branch*, the Fifth Circuit collected cases on this point as follows:

> *Melchior v. Jago,* 723 F.2d 486, 493 (6th Cir.1983) (noting that under Ohio law, "it is a necessary condition of the right to claim self defense that the accused killer be without fault"), *cert. denied,* 466 U.S. 952, 104 S.Ct. 2156, 80 L.Ed.2d 542 (1984). "One cannot provoke a fight and then rely on

---

included instructions as to both justification and self-defense—defense of third person. (ECF No. 94 at 9-10) (referring to Fifth Circuit Pattern Jury Instructions for Criminal Cases 1.38 and 1.39).

First, Hendrickson offers no briefing or corresponding reference to evidence on any of the five elements for a justification defense on a felon-in-possession charge. (ECF No. 145 at 6-7). Notwithstanding, no party presented any evidence as to whether (i) Hendrickson "recklessly or negligently" placed himself in a situation where he would be forced to possess a firearm; (ii) Hendrickson had no "reasonable, legal alternative" to possessing the firearm; or (iii) that Hendrickson possessed the firearm only during the time of danger. *See Penn*, 969 F.3d at 455. The government's video evidence shows Hendrickson did not promptly rid himself of the firearm. *Penn*, 969 F.3d at 456. No evidence shows he possessed the firearm only during the time of danger. *See Penn*, 969 F.3d at 455-56.

Second, Hendrickson offers no briefing or corresponding evidence on any of the requirements for establishing self-defense—defense of third person. The record contains no evidence that Hendrickson acted in self-defense or in defense of another. The record contains no evidence that Hendrickson was free from fault in prompting the use of force. *See Branch*, 91 F.3d at 717. The record contains no evidence of what transpired prior to the shooting as depicted in the video evidence. Otherwise, Hendrickson offers no argument as to how this defense—which relates to use of force and justification thereof—relates to the charged conduct of possessing a firearm.

---

a claim of self-defense when that provocation results in a counterattack, unless he has previously withdrawn from the fray and communicated this withdrawal." *Harris v. United States,* 364 F.2d 701 (D.C.Cir.1966) (per curiam); *see also Andersen,* 170 U.S. at 508, 18 S.Ct. at 696 (noting that self-defense is unavailable where accused "brings on the difficulty for the purpose of killing the deceased, or violation of law on his part is the reason of his expectation of an attack"); *Addington v. United States,* 165 U.S. 184, 187–88, 17 S.Ct. 288, 289–90, 41 L.Ed. 679 (1897) (same); *Gourko v. United States,* 153 U.S. 183, 191, 14 S.Ct. 806, 809, 38 L.Ed. 680 (1894) (same); *Rowe v. United States,* 370 F.2d 240, 241 (D.C.Cir.1966) (per curiam) (same).

*United States v. Branch,* 91 F.3d 699, 717–18 (5th Cir. 1996)

---

For those reasons, the Court determines Hendrickson did not produce evidence to sustain a finding on each element of either (i) the justification defense instruction or (ii) the self-defense—defense of third person instruction. *See Posada-Rios*, 158 F.3d at 873. Consequently, the Court did not err in excluding the justification and self-defense—defense of third person instructions from the charge to the jury. The Court DENIES Hendrickson's motion for new trial as to this basis.

ii.     *Ex Parte Motion(s) for Authorization of Funds under the Criminal Justice Act to Retain Expert Witnesses*

Prior to trial, Hendrickson filed three separate *ex parte* motions for authorization of funds to retain an expert witness—based on the Criminal Justice Act. (ECF Nos. 39; 48; 57). "The CJA provides the procedure both for an indigent defendant to request expert appointment and for the district court to resolve the motion." *United States v. Hardin*, 437 F.3d 463, 468 (5th Cir. 2006). Section 3006A(e) provides in relevant part,

> Counsel for a person who is financially unable to obtain ... expert ... services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court ... shall authorize counsel to obtain the services.

18 U.S.C.A. § 3006A(e)(1). District courts must "grant the defendant the assistance of an independent expert under § 3006A when necessary to respond to the government's case against him, where the government's case 'rests heavily on a theory most competently addressed by expert testimony.'" *United States v. Williams*, 998 F.2d 258, 263 (5th Cir. 1993) (quoting *United States v. Patterson,* 724 F.2d 1128, 1130 (5th Cir. 1984)). The Fifth Circuit has explained "that non-psychiatric experts, such as ballistic experts, should be provided only if the evidence is 'both 'critical' to the conviction and subject to varying expert opinion.' *Yohey v. Collins*, 985 F.2d 222, 227 (5th Cir. 1993) (quoting *Scott v. Louisiana,* 934 F.2d 631, 633 (5th Cir. 1991) (citations omitted)). In *Yohey*, the Fifth Circuit further explained:

---

> **[T]he government is not required to automatically provide indigent defendants with expert assistance upon demand.** An indigent defendant requesting non-psychiatric experts must demonstrate something more than a mere possibility of assistance from a requested expert. *Moore v. Kemp,* 809 F.2d 702, 712 (11th Cir.), *cert. denied,* 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987).

*Yohey*, 985 F.2d at 227 (emphasis added in bold). "The burden is on the defendant '[t]o justify the authorization of investigative services under § 3006A(e)(1), ... demonstrat[ing] with specificity[ ] the reasons why such services are required.'" *United States v. Boyd*, 773 F.3d 637, 642 (5th Cir. 2014) (quoting *United States v. Gadison*, 8 F.3d 186, 191 (5th Cir.1993)) (emphasis omitted).

As briefed, Hendrickson avers he should have been afforded funds to rebut the government's expert witnesses on fingerprinting, firearms, and ballistics:

> Fingerprint, firearm, and ballistic evidence played a major part in this case and the evidence "rest[ed] heavily on a theory most competently addressed by expert testimony." *United States v. Patterson*, 724 F.2d 1128, 1130 (5th Cir. 1984). [ ] The government presented testimony from three (3) expert witnesses at trial: a fingerprint expert; a firearms expert; and a ballistics expert. Had the Court properly provided the defendant with funding under the Criminal Justice Act to retain his expert witnesses, he would have been able to adequately present his defense and rebut the government's expert witnesses with testimony of his own expert witnesses.

(ECF No. 145 at 7). It is undisputed that Hendrickson is indigent. In pretrial conference with the Parties, the Court discussed Hendrickson's request regarding expert witnesses. Hendrickson represented himself pro se[3] and explained:

> [Hendrickson]: The defendant would argue that this possession of a firearm, that prior to being attacked by the assailant there was no possession of a firearm. [. . . .] I sought to get expert witnesses to rebut the government's expert witnesses in this case. And part of the reason for that was because part of my defense is not necessarily objecting to the possession of the firearm.

---

[3] The Court appointed a federal public defender to represent Hendrickson. (ECF No. 9). United States Magistrate Judge Renee H. Toliver held two hearings regarding Hendrickson's legal representation; Hendrickson sought to represent himself pro se. Ultimately, Magistrate Judge Toliver entered an Order Permitting Self-Representation. (ECF No. 38). Additionally, after several discussions with the Court regarding his legal representation, Hendrickson chose to represent himself, pro se, throughout pretrial and trial. (*See, e.g.*, ECF No. 114 at 5-16).

(ECF No. 114 at 16). It is undisputed that the government designated experts Special Agent Gilbert and Toolmark Examiner Gibson. (ECF No. 119).

Here, Hendrickson has not demonstrated "with specificity" the reason(s) as to why he sought expert services relating to "[f]ingerprint, firearm, and ballistic evidence." (ECF No. 145 at 7); *see Boyd*, 773 F.3d at 642. As discussed in pretrial conference, he merely desired to "rebut the government's expert witnesses." (ECF No. 114 at 16). Although Hendrickson appears to refer to his defense, none of the government's expert witnesses were designated to testify regarding any element of justification or self-defense—defense of third person, and none of the government's expert witnesses testified as to any element of a justification defense or self-defense—defense of third person. (ECF No. 114 at 16); (ECF No. 119).

Upon review of the record, the Court determines the evidence at issue is not both "critical" to the conviction and subject to varying expert opinion. *See Yohey*, 985 F.2d at 227. Although the government's experts provided some testimony as to the firearm and its identification as a firearm—the government's expert testimony was not critical to obtaining conviction. Instead, the video evidence, recovered firearm, images, and non-expert testimony from the various on-scene law enforcement and investigators comprised substantive evidence on each element of the government's burden of proof as to the charged conduct of unlawful possession of a firearm by a convicted felon.

Additionally, the Court permitted Hendrickson full opportunity to rebut the government's expert witnesses through cross examination, and Hendrickson cross examined the government's expert witnesses. Hendrickson questioned Special Agent Gilbert about whether the firearm was a "ghost gun" or 3D printed gun. Special Agent Gilbert admitted on cross examination (i) that the only way to authenticate a serial number of a Taurus firearm was to contact Taurus and (ii) that

Special Agent Gilbert did not contact Taurus to authenticate the serial number of the firearm. Hendrickson cross examined Toolmark Examiner Gibson on the science of firearm toolmark analysis—including the PCAST report findings.[4] Toolmark Examiner Gibson admitted on cross examination that the field of toolmark examination has been recently scrutinized.

For those reasons, the Court determines Hendrickson did not Hendrickson had not met his burden to justify the authorization of services under 18 U.S.C.A. § 3006A(e)(1). Consequently, the Court did not err in denying Hendrickson's *ex parte* motion(s) for authorization of funds under the criminal justice act to retain expert witnesses. The Court DENIES Hendrickson's motion for new trial as to this basis.

## IV.   CONCLUSION

For the reasons enumerated hereabove, the Court DENIES Hendrickson's Motion for Judgment of Acquittal, or in the Alternative, for a New Trial. (ECF No. 145).

**SO ORDERED** this 16th day of September, 2024.

ADA BROWN
UNITED STATES DISTRICT JUDGE

---

[4] The Court takes judicial notice that the term "PCAST" appears to refer to the President's Council of Advisors on Science and Technology.