# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | Case Number: 3:23-CR-00418-E |
| | § | |
| MARCO ANGELE HENDRICKSON, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are two motions from Defendant Hendrickson: (i) Motion to Reconsider Order Denying Motion to Dismiss Indictment and (ii) Hendrickson's [Second] Motion for New Trial, (ECF No. 153). For the reasons discussed hereunder, the Court DENIES both of these motions.

### I.  BACKGROUND

The Court has previously summarized the background of this case in its September 16, 2024 opinion:

> Hendrickson was charged by indictment on October 17, 2023, with possession of a firearm by a convicted felon. (ECF No. 4). Hendrickson pleaded not guilty. (ECF No. 16). The Court conducted a three-day jury trial in August 2024. *Inter alia*, the government presented evidence that on June 17, 2023, Hendrickson carried a firearm and became engaged in a shootout with an unidentified assailant near a Jack in the Box and Food Mart located off of Park Lane—including video evidence of (i) the shooting and (ii) Hendrickson dropping the firearm into a trashcan near the Food Mart. The Government presented testimony from several law enforcement officers that investigated the scene after the shooting—including recovery of the firearm. The jury found Hendrickson guilty of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 992(g)(1) and 924(a)(8). (ECF No. 136).

(ECF No. 148 at 1-2).

Prior to trial, Hendrickson filed a Motion to Dismiss Indictment, (ECF No. 25), which raised arguments that his felon in possession charge under "§ 922(g)1 is unconstitutional on its face and as-applied to him under the Second Amendment [. . . and] the Supreme Court's holding in *New York State Rifle & Pistol Ass'n, Inc v. Bruen,* 142 S. Ct. 2111 (2022). (ECF No. 25 at 1). On March 25, 2024, the Court denied this pretrial motion to dismiss by Order. (ECF No. 30); *see generally United States v. Thenstead*, No. 3:22-CR-00359-E, 2023 WL 8850766, at *1-5 (N.D. Tex. Dec. 20, 2023) (discussing *Bruen*). Hendrickson moved for reconsideration of this March 25, 2024 Order, (ECF No. 40), which the Court summarily denied on May 8, 2024. (ECF No. 54).

After three days of trial, the jury delivered its guilty verdict on August 7, 2024. On August 22, 2024, Hendrickson filed his Motion for Judgment of Acquittal [or] New Trial, which the Court considered timely filed, (ECF No. 145);[1] the Court denied this motion by written opinion. (ECF No. 148). On September 30, 2024, Hendrickson filed his Motion for Reconsideration of his pretrial motion to dismiss—requesting the Court reconsider its March 24, 2024 Order. (*See* ECF No. 152);[2] (ECF No. 30). On October 15, 2024, Hendrickson filed his Second Motion for New Trial, which asserts new and different grounds for new trial than in his first motion for new trial. (*Compare* ECF No. 153 *with* ECF No. 145).[3] The government has filed no response to either of these motions. Having been fully briefed, these motions are ripe for adjudication.

---

[1] Hendrickson served and filed several of his motions in this case by mail while in detention. This Motion for Judgment of Acquittal [or] New Trial shows that it was mailed out for filing and served on the government on August 16, 2024. (ECF No. 145 at 8-11).

[2] This Motion for Reconsideration shows that Hendrickson mailed the Motion for Reconsideration out for filing and served it on the government on September 24, 2024.

[3] This Second Motion for New Trial shows that Hendrickson mailed the Second Motion for New Trial out for filing and served on the government on October 8, 2024.

## II. LEGAL STANDARDS

### A. Motion for Reconsideration

Motions for reconsideration in criminal proceedings are judicial creations not derived from statutes or rules. *See United States v. Brewer*, 60 F.3d 1142, 1143 (5th Cir. 1995); *see, e.g.*, *United States v. Cook*, 670 F.2d 46, 48 (5th Cir. 1982) ("Although a petition for rehearing of a district court order affecting final judgment is nowhere explicitly authorized in the Federal Rules of Criminal Procedure it is undoubtedly a legitimate procedural device."). "In general, a court may grant a motion for reconsideration in a criminal case if the moving party shows the following: '(1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice.'" *United States v. Fisher*, No. 3:04-CR-172-D, 2009 WL 10702910, at *1 (N.D. Tex. Feb. 24, 2009) (quoting *Johnson v. United States*, 2008 WL 4980678, at *1 (W.D. Pa. Nov. 24, 2008)).

### B. Federal Rule of Criminal Procedure 12

Federal Rule of Criminal Procedure 12 allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). One available challenge is "a defect in the indictment," including "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). "A court may grant a motion to dismiss an indictment if the defect is one essentially a question of law," and "[m]otions to dismiss that question the constitutionality of a statute are such questions of law that are proper for the court to review." *United States v. Perry*, 2023 WL 3021074, at *2 (N.D. Tex. 2023) (citing *United States v. Flores*, 404 F.3d 32, 324 (5th Cir. 2005); *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011)).

Litigants are permitted to raise both "as applied" and "facial" challenges, but the "lawfulness of the particular application of the law should ordinarily be decided first." *Roy v. City of Monroe*, 950 F.3d 245, 251 (5th Cir. 2020) (citation omitted). "Once a case is brought," however, "no general categorical line bars a court from making broader pronouncements of invalidity in properly 'as-applied' cases." *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 331 (2010) (citation omitted). "As applied" challenges require the court to determine whether the law or act may constitutionally be applied to some and be applied unconstitutionally to others. *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973). In a facial challenge, a defendant must "establish that no set of circumstances exists under which the Act would be valid." *United States v. Rahimi*, 602 U.S. 680, 681 (2024) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

### C. Motion for New Trial

Federal Rule of Criminal Procedure 33 permits the district court to grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33; *United States v. Mahmood*, 820 F.3d 177, 190 (5th Cir. 2016). The "interest of justice," moreover, may be determined by the "trial judge's evaluation of witnesses and weighing of the evidence." *United States v. Wall*, 389 F.3d 457, 465–66. (5th Cir. 2004). Although the Court has broad discretion in ruling on a Rule 33 motion, it may not grant a new trial unless "the evidence preponderates heavily against the verdict such that it would be a miscarriage of justice to let the verdict stand." *United States v. Fuchs*, 467 F.3d 889, 910 (5th Cir. 2006). These motions are "disfavored and must be reviewed with great caution." *United States v. Eghobor*, 812 F.3d 352, 363 (5th Cir. 2015). "Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2).

### III. ANALYSIS

As filed, both Hendrickson's Motion for Reconsideration and Second Motion for New Trial seek similar relief: either the dismissal of the case or the setting aside of the jury's guilty verdict. As to his request for reconsideration, Hendrickson's arguments are that (i) the Court should conduct a Two-Step *Bruen* analysis and (ii) § 992(g)(1) is unconstitutional as applied to *Hendrickson*—relying on *United States v. Diaz*, 116 F.4th 458, 461 (5th Cir. 2024), which the Fifth Circuit issued on September 18, 2024. As to his Second Motion for New Trial, Hendrickson's arguments are that (i) a government witness perjured himself—thereby depriving Hendrickson of due process—and (ii) the government failed to comply with its disclosure obligations under *Brady* and the Jencks Act. The Court addresses each of these arguments, hereunder.

#### A. Motion for Reconsideration – *Bruen* and *Diaz* Challenges

At the outset, Hendrickson did not assert either of these bases in his prior Motion for Judgment of Acquittal [or] New Trial. (*See* ECF No. 145).[4] Instead, Hendrickson presented his *Bruen* argument in his pretrial motion to dismiss. (ECF No. 25). Since (i) Hendrickson never presented these bases for the Court's consideration in his first Motion for Judgment of Acquittal [or] New Trial, (ECF No. 145) and (ii) Hendrickson's renewed request for reconsideration of his motion to dismiss is now post-trial, the Court construes Hendrickson's Motion for Reconsideration as an additional motion for new trial. These arguments are not based on newly discovered evidence but are based on "other grounds." *See* Fed. R. Crim. P. 33(b). Therefore, these arguments should have been presented in a filing for new trial "within 14 days after the [jury's guilty verdict]." Fed.

---

[4] Hendrickson's Motion for Judgment of Acquittal [or] New Trial asserted arguments relating to (i) the legal sufficiency of the evidence; (ii) the Court's refusal to submit a proposed justification and self defense instruction to the jury; and (iii) the Court's denial of Hendrickson's ex parte request for authorization of funds. (ECF No. 145). The Court addressed all three of these bases in its prior opinion—denying each of these bases as to the requested relief. (ECF No. 148).

R. Crim. P. 33(b). Hendrickson's Motion for Reconsideration (which the Court construes as an additional motion for new trial) has been filed in excess of 14 days after the jury's verdict. Consequently, the Court DENIES Hendrickson's Motion for Reconsideration. (ECF No. 152).

Assuming *arguendo* these arguments were timely presented, the Court would reach the same result of denial. As the Court explained in its March 25, 2024 Order—binding Fifth Circuit precedent forecloses Hendrickson's arguments asserted in his pretrial motion to dismiss. (*See* ECF Nos. 25; 30). As previously ordered:

> Despite numerous challenges to section 922(g)(1) in the wake of *Bruen*, the Court is aware of no decisions that conclude Section 922(g)(1) violates the Second Amendment from the Fifth Circuit or in the Northern District of Texas. In light of the Government's sources—and affirmed in that conclusion by the collective wisdom of other courts that have evaluated facial challenges in light of the historical record—the Court also concludes that section 922(g)(1) still "passes constitutional muster." *United States v. Zelaya Hernandez*, No. 3:23-CR-0056-B, 2023 WL 4161203, at *7 (N.D. Tex. June 23, 2023); *United States v. Robinson*, No. 3:21-CR-00159-N, 2023 WL 4304762, at *2 (N.D. Tex. June 29, 2023).

*Thenstead*, 2023 WL 8850766, at *5 (footnotes omitted). Another district court in the Northern District of Texas has discussed *Bruen*:

> *Bruen* did not announce a "new rule" invalidating 18 U.S.C. § 922(g)(1), the federal statute that prohibits felons from possessing firearms. The Supreme Court in *Bruen* stated plainly that the Second Amendment does not protect the rights of felons, but rather the rights of "ordinary, law-abiding citizen[s]. . . ." 597 U.S. at 1, 9, 142 S.Ct. 2111. In *District of Columbia v. Heller*, the Supreme Court recognized "longstanding prohibitions on the possession of firearms by felons" as lawful limitations on the right to bear arms. 554 U.S. 570, 626-27, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008); *see also McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 786, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (Alito, J.) (plurality opinion) (same). Even the dissent in *Bruen* acknowledged that the opinion "cast[s] no doubt on that aspect of *Heller*'s holding" prohibiting felons from possessing firearms. *Bruen*, 597 U.S. at 129, 142 S.Ct. 2111 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting).

*Contreras-Orosco v. United States*, No. 3:17-CR-00258-M-1, 2024 WL 4341551, at *2 (N.D. Tex. Sept. 27, 2024). The Court adopts this reasoning from *Contreras-Orosco*. 2024 WL 4341551, at *2. The Court declines to repeat its analysis from *Thenstead*, which also applies to Hendrickson's

§ 922(g)(1) challenges. 2023 WL 8850766, at *1-5. District judges in the Northern District have held that § 922(g)(1) "passes constitutional muster" post *Bruen*. *See United States v. Robinson*, 680 F. Supp. 3d 737, 740-41 (N.D. Tex. 2023); *United States v. Zelaya Hernandez*, 678 F. Supp. 3d 850, 858 (N.D. Tex. 2023).

Next, the Fifth Circuit's opinion in *Diaz* does not change the Court's conclusion(s). In *Diaz*, the Fifth Circuit rejected facial and as-applied challenges to § 922(g)(1). 116 F.4th at 471-72; *see, e.g.*, *Kraut v. United States*, No. 3:18-CR-462-K-1, 2024 WL 4544122, at *3 (N.D. Tex. Oct. 22, 2024); *Contreras-Orosco*, No. 2024 WL 4341551, at *2 (discussing the same). In *Diaz*, the Fifth Circuit concluded that the regulation of firearm possession by felons is "consistent with this Nation's historical tradition of firearm regulation." 116 F.4th at 472. The Fifth Circuit determined that § 922(g)(1) is constitutional in at least one application—as applied to a defendant with predicate convictions for car theft, evading arrest, and possessing a firearm as a felon. *Diaz*, 116 F.4th at 472 (citing *United States v. Rahimi*, 602 U.S. 680, 692 (2024)). Another district court explained in applying *Diaz*:

> From the earliest days of common law, "firearm regulations have included provisions barring people from misusing weapons to harm or menace others."[]
> Among those provisions are "going armed" laws that targeted conduct "disrupt[ing] the public order ... and le[ading] almost necessarily to actual violence."[]
> [. . . .]
> Congress has long recognized "that drugs and guns are a dangerous combination."[] And several federal appellate courts have recognized that "drug dealing is notoriously linked to violence."[] Thus, permanently disarming felons like Patino who have committed serious drug and gun felonies, felonies often associated with violence, is consistent with the Nation's historical tradition of firearm regulation.

*United States v. San Ynes Patino*, No. MO:24-CR-60-DC, 2024 WL 5010146, at *6 (W.D. Tex. Nov. 26, 2024) (footnotes omitted); *see generally Smith v. United States*, 508 U.S. 223, 240 (1993) (citing statistics on the percentage of murders relating to the drug trade).

Here, Hendrickson asserts *Diaz* constitutes a change in law. But Hendrickson fails to brief how or why this asserted change would result in a different outcome for Hendrickson—that is, dismissal of the case. (ECF No. 152 at 4-6). For the as-applied challenge, Hendrickson provides no briefing as to his predicate offenses. (ECF No. 152 at 4-6). "For the purposes of assessing [Hendrickson's] predicate offenses under § 922(g)(1), [the Court] may consider prior convictions that are 'punishable by imprisonment for a term exceeding one year.'" *Diaz*, 116 F.4th at 467 (citing § 922(g)(1)). Hendrickson has several convictions that are punishable by imprisonment for a term exceeding one year:

**(i)** 2001 possession of illegal sawed-off shotgun from Oklahoma—resulting in a two-year imprisonment sentence;[5]

**(ii)** 2001 unlawful possession of marijuana with intent to distribute from Oklahoma—resulting in an eight-year imprisonment sentence;[6]

**(iii)** 2001 escape from county jail from Oklahoma—resulting in a two-year imprisonment sentence;[7]

**(iv)** 2004 unlawful possession of a firearm from Oklahoma—resulting in a three-year imprisonment sentence;[8] and

**(v)** 2008 interference with commerce and aiding and abetting, possession of a firearm in furtherance of a crime of violence from the Northern District of

---

[5] *See* Okla. Stat. Ann. tit. 21, § 1289.18(C) ("Every person who knowingly has in his possession or under his immediate control a sawed-off shotgun or a sawed-off rifle, whether concealed or not, shall upon conviction be guilty of a felony for the possession of such device, and shall be punishable by a fine not to exceed One Thousand Dollars ($1,000.00), or imprisonment in the State Penitentiary for a period not to exceed two (2) years, or both such fine and imprisonment.)

[6] *See* Okla. Stat. Ann. tit. 63, § 2-401(F)

[7] *See* Okla. Stat. Ann. tit. 21, § 443(A-B)

[8] *See* Okla. Stat. Ann. tit. 21, §§ 1272-1289.24.

Oklahoma—resulting in respective 151-month and 120-month imprisonment sentences.[9]

(*See* ECF No. 154-1 at 7-12). The Court concludes from Hendrickson's record of predicate offenses that he represents a "credible threat to the physical safety of another," and § 922(g)(1) is not unconstitutional as applied to him. *Rahimi*, 602 U.S. at 692-93, 702;[10] *see, e.g.*, *United States v. Martinez*, No. 3:24-CR-148-L, 2024 WL 4508962, at *4 (N.D. Tex. Oct. 16, 2024); *Patino*, 2024 WL 5010146, at *6. Similar to *Patino*, permanently disarming felons like Hendrickson—who have committed serious drug and gun felonies, felonies often associated with violence—is consistent with the Nation's historical tradition of firearm regulation. *Patino*, 2024 WL 5010146, at *6.

As to Hendrickson's facial challenge, the Fifth Circuit explained that "[t]o sustain a facial challenge, 'the challenger must establish that no set of circumstances exists under which the statute would be valid.'" *Diaz*, 116 F.4th at 471 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Hendrickson provides no such briefing and "cannot [] because the statute is constitutional

---

[9] The style and cause number for this proceeding in the Northern District of Oklahoma are as follows: *United States v. Hendrickson*, 08-CR-197-002-JHP; 4:08-CR-197. *See generally* 18 U.S.C. § 1951; 18 U.S.C. § 924(c); *United States v. Hendrickson*, 592 Fed. Appx. 699, 700-07 (10th Cir. 2014) (discussing this indictment and addressing a § 2255 motion); *United States v. Hendrickson*, No. 08-CR-197-JHP, 2012 WL 262985, at *1 (N.D. Okla. Jan. 30, 2012), aff'd, 592 Fed. Appx. 699 (10th Cir. 2014);

[10] In *Rahimi* the Fifth Circuit explained:

> Recall that Section 922(g)(8) provides two independent bases for liability. Section 922(g)(8)(C)(i) bars an individual from possessing a firearm if his restraining order includes a finding that he poses "a credible threat to the physical safety" of a protected person. Separately, Section 922(g)(8)(C)(ii) bars an individual from possessing a firearm if his restraining order "prohibits the use, attempted use, or threatened use of physical force." Our analysis starts and stops with Section 922(g)(8)(C)(i) because *the Government offers ample evidence that the Second Amendment permits the disarmament of individuals who pose a credible threat to the physical safety of others.*

*United States v. Rahimi*, 602 U.S. 680, 693 (2024).

as applied to the facts of his own case." *Diaz*, 116 F.4th at 471 (citing *Rahimi*, 602 U.S.at 692-93); *see, e.g.*, *Patino*, 2024 WL 5010146, at *6.

Hendrickson has not shown either (i) an intervening change in the controlling law; (ii) the availability of new evidence which was not available when the court issued its order; or (iii) the need to correct a clear error of law or fact or to prevent a manifest injustice.'" *See Fisher*, 2009 WL 10702910, at *1. Assuming *arguendo* these arguments were properly and timely presented, the Court would DENY Hendrickson's Motion for Reconsideration. (ECF No. 152).

### B.  Second Motion for New Trial – Perjury, *Brady*, and Jencks Challenges

As with his Motion for Reconsideration—which the Court construes as an additional motion for new trial—Hendrickson filed his Second Motion for New Trial in excess of 14 days after the jury's verdict. This Second Motion for New Trial is not based on newly discovered evidence but based on "other grounds." (ECF No. 153); *see* Fed. R. Crim. P. 33(b). Hendrickson also directs the Court to no rule or law that permits successive motion(s) for new trial under these circumstances, and the Court has found none. *See generally* Fed. R. Crim. P. 33. Consequently, the Court DENIES Hendrickson's Second Motion for New Trial as filed in excess of 14 days after the jury's verdict. (ECF No. 153); *see* Fed. R. Crim. P. 33(b).

Assuming *arguendo* these arguments were timely presented, the Court would reach the same result—denial of new trial. Hendrickson's argument that government witness Officer Mireles perjured himself—thereby depriving Hendrickson of due process—does not appear to have been asserted by timely objection during trial. *See* Fed. R. Evid. 103(a) (requiring timely objection to admission or exclusion of evidence). Additionally, the asserted "false testimony" Hendrickson asserts relates to whether Officer Mireles took notes while investigating the crime and interviewing

a different witness. (ECF No. 153 at 5-7).[11] Hendrickson fails to brief how or why this testimony—regarding whether Officer Mireles took notes—was material to his conviction for unlawful possession of a firearm. (ECF No. 153 at 5-7); *see generally United States v. Salinas*, 923 F.2d 339, 341 (5th Cir. 1991) (discussing materiality in the context of perjury—false declarations before a court). The Court concludes that the corresponding testimony from Officer Mireles was not material to his conviction.

Hendrickson's arguments that the government failed to comply with its disclosure obligations under *Brady* relate to (i) "investigative rough notes" taken by "[Officer] Mireles or other law enforcement officials during their investigation of this case" and (ii) "grand jury transcripts." (ECF No. 153 at 7-9). "Under the familiar *Brady* standard, the government violates a defendant's due process rights if it withholds evidence that is favorable to the accused and material to the defendant's guilt or punishment." *United States v. Swenson*, 894 F.3d 677, 683 (5th Cir. 2018) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The Fifth Circuit stated:

> This rule applies "irrespective of the good faith or bad faith of the prosecution." *Id.* And it "extends to impeachment evidence as well as exculpatory evidence." *Youngblood v. West Virginia*, 547 U.S. 867, 869, 126 S.Ct. 2188, 165 L.Ed.2d 269 (2006). **To prevail on a Brady claim, "a defendant must show: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material."** *United States v. Dvorin*, 817 F.3d 438, 450 (5th Cir. 2016). The government argues that all three prongs (favorability, suppression, and materiality) weigh in its favor.

*Swenson*, 894 F.3d at 683 (emphasis added in bold italics). Here, Hendrickson fails to brief or show (i) the "investigative rough notes" or "grand jury transcripts" were favorable to him as exculpatory or impeaching; (ii) the evidence was suppressed by the prosecution; or (iii) the

---

[11] Hendrickson provides no specific reference in the record to the asserted "false testimony." The Court permitted Hendrickson to cross-examine Officer Mireles on his note-taking. Officer Mireles testified on cross examination that a body-camera captured his interview of a witness.

asserted *Brady* evidence was material. Hendrickson has failed to meet his burden under *Brady*. *Swenson*, 894 F.3d at 683.

Regarding the Jencks Act, Hendrickson asserts he should have been provided with the investigative rough notes taken by Officer Mireles or other law enforcement officials during their investigation of this case. Apart from Officer Mireles, the only other government witness Hendrickson complains of—in the context of the Jencks Act—is Officer Rodriguez.

The Jencks Act provides that: "[i]n any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C.A. § 3500(a). "18 U.S.C. § 3500(b) (which pertains to the government) and Rule 26.2(a) (which pertains to the government and to a defendant) do not authorize the court to compel a party to produce a witness statement any earlier than after a witness has testified on direct examination." *United States v. Khoury*, 2014 WL 6633065, at *5 (N.D. Tex. Nov. 24, 2014). "In this district, however, it is the custom for Jencks Act-type materials, including statements under Rule 26.2(a), to be disclosed at the end of the business day preceding the date on which the defendant will begin his cross-examination of a witness." *Khoury*, 2014 WL 6633065, at *5.

The Court held pretrial on June 28, 2024, and August 2, 2024, wherein the Government repeatedly agreed to comply with the Jencks Act:[12]

> [AUSA Jones]: We also, when we brought [Hendrickson] to the office, the day the pretrial filings were due, gave him copies of the exhibit list. Finished out the productions. And also that day, gave him some Jencks material ahead of time to -- this week we have some additional Jencks material, as is standard proceeding up to the trial. And have provided all of that to him this morning.

---

[12] "Enforcement of the Jencks Act is an affirmative duty of the trial court." *United States v. McKenzie*, 768 F.2d 602, 607 (5th Cir. 1985)

> The only remaining item for the Jencks material is -- and I just clarified this this morning -- Austin LaBudda was the defendant's probation officer in the Eastern District of Texas. As the Court is aware, Probation and the Court has what they call KRONOS, or chronologicals, that are kind of their internal notes as to when they do things. Obviously, my understanding from the Eastern District of Texas, and I believe it's the same here, is those are not subject to any subpoena, because they are property of the court. However, to comply with our Jencks obligation, we asked Mr. LaBudda to review those and determine is there's anything that is not in the entirety of the memorandum for revocation. Which is approximately 80 pages long. That has been given to the defendant.
>
> THE COURT: Okay.
>
> [AUSA Jones]: And he has determined -- just verified with me this morning via text, so that I could give this last Jencks material to the defendant, that it was in his -- I call it KRONOS, that LaBudda and the defendant, Mr. Hendrickson, spoke about the gun law warning, which is Government's Exhibit 4. And Hendrickson acknowledged his understanding, signed the form and was given a copy. And this was all occurring the day he came in for his intake. I'd like the record to reflect that I am tendering a copy of that right now to the defendant. (Documents tendered.)

(ECF No. 114 at 25-26).[13] Later during the pretrial conference, the Court asked the government regarding Jencks material and retention of government agents' notes:

> [AUSA Jones]: [. . .] I don't know that there is any, other than the reports, that need to be done. I believe [Hendrickson]'s just asking that they not be destroyed at this point forward. I'm happy to relay that to witnesses. But in terms of flip books and whatnot, or scratch pieces of paper, I just have no idea if those even still exist. So I'm happy to tell the witnesses that on Monday, but I -- we've complied with Rule 16, so.
>
> THE COURT: So, Mr. Hendrickson, I can make them comply with the -- the text of Rule 16. And it sounds like they're certainly willing to do that. **Does that satisfy your request?**
>
> [Hendrickson]: ***Yes, Your Honor***.

(ECF No. 114 at 58-59) (emphasis added in bold italics). After Officer Mireles's testimony on August 6, 2024, Hendrickson asserted a Jencks Act motion for the production of statement(s)

---

[13] *Inter alia*, the government explained that it provided the documents to Hendrickson in-person at meeting or through standby counsel (Federal Public Defender Khan) because Hendrickson's pretrial detention prevented him from receiving or taking materials while in pretrial detention. (*See* ECF No. 114 at 24-28).

during the trial, after Officer Mireles testified. 18 U.S.C.A. § 3500(b) ("After a witness called by the United States has testified on direct examination, the court shall, **on motion of the defendant**, order the United States to produce any statement [. . .] of the witness in the possession of the United States[.]") (emphasis added in bold italics).[14] The government explained there was no additional Jencks materials that had not been previously disclosed. Hendrickson thereafter sought no specific ruling on Jencks materials for either Officers Mireles or Rodriguez—including no specific ruling as to any notes. Without seeking a specific ruling from the Court, Hendrickson effectively abandoned production of the asserted Jencks materials. *See United States v. McKenzie*, 768 F.2d 602, 608 (5th Cir. 1985) ("By allowing their claim to rest without seeking a ruling from the district court, the defendants effectively abandoned it.") (collecting cases). Additionally, Hendrickson does not argue whether the notes were signed or approved; "[t]he Jencks Act applies only to a written statement "signed . . . or approved" by the witness." *United States v. Jimenez*, 509 F.3d 682, 694 (5th Cir. 2007) (quoting 18 U.S.C. § 3500(b), (e)(1)). Thus, Hendrickson has not shown the government failed to comply with its Jencks Act obligations. *See generally* 18 U.S.C. § 3500.

Hendrickson has not shown—and the Court cannot conclude—that the interest of justices requires a new trial. *Mahmood*, 820 F.3d at 190. In evaluating the witnesses and weighing the evidence before the Court, the Court determines that the evidence does not preponderate heavily against the jury's verdict such that it would be a miscarriage of justice to let the verdict stand. *Fuchs*, 467 F.3d at 910. Assuming *arguendo* Hendrickson timely presented these arguments in a

---

[14] *See also* Fed. R. Crim. P. 26.2(a) ("After a witness other than the defendant has testified on direct examination, the court, **on motion of a party who did not call the witness**, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony.") (emphasis added in bold italics).

proper motion for new trial—the Court would DENY the Second Motion for New Trial. (ECF No. 153).

## IV. CONCLUSION

For the reasons enumerated hereabove, the Court DENIES (i) Hendrickson's Motion for Reconsideration, (ECF No. 152), and (ii) Hendrickson's Second Motion for New Trial, (ECF No. 153).

**SO ORDERED** this 13th day of December, 2024.

ADA BROWN
UNITED STATES DISTRICT JUDGE